RICHARD T. NEWTON,

                                        Plaintiff,

        v.                                                      5:14-CV-904
                                                                (TJM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

STEVEN R. DOLSON, ESQ., for Plaintiff
SERGEI ADEN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

        This matter was referred to me for report and recommendation by the Honorable
Thomas J. McAvoy, United States District Judge, pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

        On January 24, 2011, plaintiff protectively filed applications for Social Security
Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")
benefits, alleging disability beginning January 1, 2010. (Administrative Transcript
("T") at 50, 187).  The applications were initially denied on August 10, 2011. (T. 64-
79).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which
was held on November 20, 2012. (T. 6-42).  On December 28, 2012, ALJ Yvette N.
Diamond found plaintiff was not disabled. (T. 47-61).  The ALJ's decision became the
Commissioner's final decision when the Appeals Council denied plaintiff's request for
review on June 10, 2014. (T. 1-4).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the

residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record

contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff is a 56 year old man,[1] with four adult children, who lives with his mother. (T. 11-12, 45).  He completed school up to the tenth grade and subsequently obtained his General Equivalency Degree. (T. 13).  Plaintiff also completed vocational school training in the construction and building maintenance fields. (*Id.*).

Aside from occasional temporary work[2], plaintiff's most recent employment, as a back-end loader for a trash removal service, ended in September 2009. (T. 16-17, 20, 246).  He testified that he left that position due to transportation issues. (T. 17).  His prior employment also included site cleanup for a construction company and a cleaner position for a commercial janitorial service. (T. 18).

Beginning in November 2009, plaintiff had been treated for lower back pain

---

[1] At the time of the hearing in November 2012, plaintiff was 53 years old.

[2] The ALJ concluded that this work did not qualify as substantial gainful activity due to its short duration and plaintiff's limited earnings. (T. 52).

which radiated to his knees and legs. (T. 20, 408). In June 2010, x-rays showed mild compression of the L2 vertebra, disc space narrowing throughout plaintiff's lumbosacral spine, and degenerative arthritic changes in plaintiff's back and knees. (T. 406). Plaintiff was prescribed pain medication, which he took as needed. (T. 21, 407).

Plaintiff also received psychiatric treatment, including counseling for alcohol and substance abuse. Plaintiff was briefly prescribed Cymbalta, but at the time of the hearing was not taking any psychiatric medication. (T. 21). Plaintiff testified that he attended group counseling for substance abuse three days a week, along with regular individual sessions with his counselor and monthly appointments with a psychiatrist. (T. 22).

Plaintiff took care of his mother, including cleaning up around the house, running errands, and shopping at the grocery store or pharmacy. (T. 24-25). He received assistance from his brothers, who lived nearby. (T. 25). Friends often prepared food and dropped it off at his home, and his mother received Meals on Wheels. (T. 27). Plaintiff would warm up these meals in the microwave, but generally did not cook. (*Id.*).

Plaintiff testified that he tried to keep active, including walking, doing push-ups, and performing stretches and other exercises to help his back. (T. 28). Plaintiff also went to a gym, but testified that he had not been there much in the last two years. (*Id.*). He also regularly attended church activities, participated in Narcotics Anonymous Meetings, and went to watch neighborhood sports leagues. (T. 29). Plaintiff reported that his hobbies included swimming, dancing, and ping-pong, but testified that he had

not done any of those activities recently. (T. 31).

Further details regarding the medical and other evidence, including the medical opinion evidence, are discussed below as necessary to address the issues raised by plaintiff.

## IV.   **THE ALJ'S DECISION**

The ALJ determined that plaintiff met his insured status through December 31, 2010, and that plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2010.  (T. 52).  The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: degenerative disc disease, depressive disorder, alcohol abuse, cannabis abuse, and cocaine abuse. (*Id*.).  The ALJ further found that plaintiff's hepatitis C and hypertension did not constitute severe impairments, as each is well-controlled by medication. (T. 53).  At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id.*).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform medium work.  Plaintiff could lift and carry up to fifty pounds occasionally and twenty-five pounds frequently,[3] but could only stand or walk for six out of eight hours; and could only sit for six out of eight hours.  (T. 54).  The ALJ determined that plaintiff 's ability to push and pull was unlimited, and he had no postural or manipulative limitations, but that he was limited to simple, routine tasks. (*Id*.).

---

[3] In the context of exertional limitations, "frequently" means "from one-third to two-thirds of the time" and "occasionally" means "from very little up to one-third of the time." SSR 83-14, 1983 WL 31254, at *2.

In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (*Id.*). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.929 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*).

After considering the evidence and plaintiff's testimony, the ALJ found that plaintiff was not fully credible with respect to the intensity, persistence, and limiting effects of his symptoms. (T. 56). In making the credibility determination, the ALJ considered the plaintiff's testimony in addition to the medical evidence. (T. 55). The ALJ also noted the comments of one of plaintiff's treating psychiatrists, who reported that "[t]here is clearly a manipulative edge to [plaintiff's] not wanting to work from a psychiatric perspective." (T. 57, 525). The ALJ found that "[t]his greatly calls into question the varying allegations of disabling symptoms described by [plaintiff]. (T. 57).

At step four, the ALJ determined that plaintiff's RFC would allow him to perform his past relevant work as a garbage collector and cleaner. (T. 58). Relying on the hearing testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff was able to perform his past work as a garbage collector as actually performed, and his past work as a cleaner as actually performed and generally defined under the Dictionary of Occupational Titles ("DOT"). (*Id.*). Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date, January 1, 2010, to the date of the

decision. (*Id.*).

## V.   **ISSUES IN CONTENTION**

Plaintiff raises the following arguments:

1. The ALJ failed to assess all severe impairments and include the true limiting effect of those impairments in the RFC determination, resulting in an RFC evaluation that is not supported by substantial evidence. (Pl.'s Br. at 3-6). (Dkt. No. 10).

2. The ALJ failed to properly assess plaintiff's past relevant work. (Pl.'s Br. at 6-8).

3. The ALJ failed to properly assess plaintiff's obesity. (Pl.'s Br. at 9-10).

Defendant argues that the Commissioner's determination is supported by substantial evidence and should be affirmed. (Def.'s Br. at 5-15). (Dkt. No. 12). For the following reasons, this court agrees with the defendant and will recommend dismissing the complaint.

## **DISCUSSION**

## VI.   **SEVERE IMPAIRMENT**

### A.   **Legal Standard**

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Briggs v. Astrue*, No. 5:09–CV–1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Rep't.-Rec.), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work

activities).

The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, No. 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013) (quoting *McConnell v. Astrue*, No. 6:03-CV-521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting SSR 85-28, 1985 WL 56856, at *3 (1985)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." SSR 85-28, 1985 WL 56856, at *3. The Second Circuit has held that the step two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a *de*

*minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Id.* at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

## B.    Application

Plaintiff argues that the ALJ erred by not finding that arthritis in plaintiff's knees also constituted a severe impairment. (Pl.'s Br. at 4). This court disagrees.

In support of this argument, plaintiff cites to a single Diagnostic X-Ray Report prepared by Syracuse Community Health Center, Inc. on June 24, 2010. (Pl.'s Br. at 4). The report, which focused on the condition of plaintiff's lumbosacral spine, also noted that plaintiff had "mild joint space narrowing . . . medially at the right knee," and "[m]inimal hypertrophic spurring . . . at the patella at the left knee." (T. 406). Plaintiff reported "knee and foot pain" to his treating physician on June 23, 2010, which may have prompted the x-ray, but there is no record of any follow-up treatment. (T. 407). In fact, as the ALJ noted, plaintiff was twice referred to a pain specialist for his back

problems but did not make an appointment. (T. 56, 405, 478). The only other mention of knee pain in plaintiff's medical records is a note in the consultative report that plaintiff "has lower back pain that comes and goes, down the left leg to the left knee." (T. 425). There is no reference to arthritis in either knee, and the consultative examiner, Dr. Kalyani Ganesh, found that plaintiff's knees had full bilateral range of motion. (T. 427).

As discussed above, the mere diagnosis of an impairment does not justify its designation as severe. *Hamilton*, No. 12-CV-6291, 2013 WL 5474210, at *10. In particular, plaintiff's complaints of "knee pain," without more, did not justify the conclusion that plaintiff's arthritis was a severe impairment. (T. 407). Plaintiff bears the burden of presenting evidence establishing severity. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); *see also* 20 C.F.R. §§ 404.1512(a), 404.1512(c). Pain is a symptom, not an impairment, and the ALJ properly delayed consideration of plaintiff's alleged pain and related limitations until the RFC analysis.[4] *Charlton v. Comm'r of Soc. Sec.*, No. 08-CV-142, 2009 WL 838118, at *15; SSR 96-4p, 1996 WL 374187 at *2. Therefore, the ALJ's conclusions regarding severity are supported by substantial evidence.

---

[4] Because the ALJ considered plaintiff's knee pain as well as the June 24, 2010 x-ray diagnostic report as part of her RFC analysis and did not deny plaintiff's claim at Step 2 of the sequential analysis, any error in not finding plaintiff's knee arthritis to be severe would have been harmless.

## VII.  RFC

### A.  Legal Standards

RFC is "what [the] individual can still do despite his or her limitations.
Ordinarily, RFC is the individual's maximum remaining ability to do sustained work
activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular
and continuing basis" means eight hours a day, for five days a week, or an equivalent
work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2
(N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)
(quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical
facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's
subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R
§§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)
(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must
specify the functions plaintiff is capable of performing, and may not simply make
conclusory statements regarding a plaintiff's capacities.  *Martone*, 70 F. Supp. 2d at
150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*,
737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y.
1987)).  The RFC assessment must also include a narrative discussion, describing how
the evidence supports the ALJ's conclusions, citing specific medical facts, and non-
medical evidence.  *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6
(N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

## B.    Application

The ALJ found that plaintiff could perform medium work[5] except that plaintiff could only stand or walk for six out of eight hours, and sit for six out of eight hours. The ALJ found, based on plaintiff's testimony, that plaintiff had no limits on pushing and pulling and no postural or manipulative limitations.  The ALJ determined that plaintiff was limited to simple, routine tasks.

Plaintiff contends that the ALJ failed to address the limitations imposed by plaintiff's knee arthritis, and non-exertional limitations related to plaintiff's back and knee impairments, including pain, limited range of motion in the spine, and a reduced ability to squat.  (Pl.'s Br. at 4-6).  However, the ALJ's decision shows consideration of all of these issues as part of her consideration of the medical evidence and plaintiff's testimony.

The ALJ referenced plaintiff's complaints of "pain in his lower back, which radiates to the arms and left leg." (T. 55).  She considered plaintiff's testimony that he had difficulty bending, that he had difficulty with stairs, and that he required the use of a cane for balance. (T. 34-35, 55, 206-207).  The ALJ also considered plaintiff's claims regarding limitations on his ability to stand, sit, kneel and squat. (T. 35-36, 55, 206). The ALJ found that all of these complaints were inconsistent with plaintiff's testimony regarding his daily activities.  At the ALJ hearing, plaintiff testified that he swam, danced, cooked, cleaned, did laundry, and ran errands for his mother. (T. 28-31, 55). Plaintiff testified to doing push-ups and "dips" at home to help his back, and

---

[5] If someone can perform medium work, he or she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

occasionally working out at a gym. (T. 27-28, 55). Plaintiff also testified that he only occasionally used a cane, and that he was able to walk a half mile to the ALJ hearing. (T. 34).

The ALJ also considered plaintiff's medical records, and referenced the June 24, 2010 Diagnostic X-Ray Report relied on heavily by plaintiff in this proceeding, as well as a December 28, 2011 imaging report which showed moderately advanced degenerative arthritic change and degenerative disc disease. (T. 56, 406, 476). The ALJ noted that plaintiff had not followed up on two referrals to a pain specialist, and that plaintiff did not provide any medical evidence showing physical therapy or other treatment to alleviate the purported limitations caused by these impairments. (T. 56).

The ALJ also gave "great weight" to the consultative examination of Dr. Ganesh. Summarizing Dr. Ganesh's report, the ALJ noted that plaintiff could not complete a full squat and had decreased range of motion in his lumbar spine. (T. 56, 426-27). After a physical examination, Dr. Ganesh found that plaintiff had a normal gait and stance, could heel and toe walk, required no assistive devices, had a negative straight leg raise, was able to get on and off the examination table without assistance, and had full strength in all extremities. (T. 56, 425-427). The ALJ thus adopted Dr. Ganesh's conclusions that plaintiff had no gross limitations in sitting, standing, walking or using his upper extremities as consistent with the medical evidence and plaintiff's testimony. (T. 56, 427). The ALJ rejected Dr. Ganesh's conclusion that plaintiff had a "mild" limitation in lifting, carrying, pushing and pulling, concluding that even a mild limitation was inconsistent with plaintiff's testimony that he regularly did push-ups and

14

occasionally worked out at a gym. (T. 56, 427).

In evaluating plaintiff's mental impairments, including depressive disorder, alcoholism, and substance abuse, the ALJ relied upon psychiatric evaluations which found that plaintiff had appropriate affect, average intelligence, fair insight, intact judgment, and no difficulty with attention. (T. 57, 422-23, 495-96). Plaintiff had previously taken Cymbalta but at the time of the hearing was not taking any psychiatric medications. (T. 21, 57). The ALJ adopted those evaluations which found that plaintiff was limited to simple, routine tasks, but found that conclusions regarding plaintiff's social functioning, particularly those of consulting psychiatric examiner Dr. Jeanne Shapiro, were not consistent with plaintiff's testimony that he had no social anxiety and engaged in a number of social activities. (T. 57).

In light of the active lifestyle described in plaintiff's testimony, the ALJ concluded that plaintiff was not as limited as he alleged in his disability applications and during his testimony. (T. 56-58). The ALJ also considered the conclusion by one of plaintiff's examining psychiatrists, that "[t]here is clearly a manipulative edge to [plaintiff's] not wanting to work from the psychiatric perspective."[6] (T. 57, 525).

It is the province of the ALJ to resolve conflicts in the evidence. *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008). In doing so, an ALJ may properly reject subjective complaints after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, so long as the ALJ sets forth her reasons "with sufficient specificity to enable us to decide whether the determination is

---

[6] At the time of the exam, plaintiff was seeking an exemption from a JobsPlus program that required twenty hours of work per week. (T. 525).

supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). As set forth above, the ALJ's conclusions regarding the medical evidence and plaintiff's credibility are supported by substantial evidence. Accordingly, the ALJ's RFC assessment is likewise supported by substantial evidence.

## VIII. **PAST RELEVANT WORK**

### A. **Legal Standard**

At step four of the analysis, the ALJ must address a claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that a claimant has performed in the past 15 years and that constituted substantial gainful activity. 20 C.F.R. § 404.1565(a), (b). If the claimant can return to his past relevant work, the Commissioner will find that he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). Where substantial evidence supports the ALJ's conclusions as to whether plaintiff's RFC allows plaintiff to perform his past relevant work, it is unnecessary to remand the case for further development of the record. *See Stenoski v. Comm'r of Social Security*, No. 7:07-CV-552, 2010 WL 985367, at *6 (N.D.N.Y. Mar. 16, 2010). Plaintiff "has the burden to show an inability to return to h[is] previous specific job and an inability to perform h[is] past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citation and emphasis omitted). This determination requires consideration of: 1) an individual's statements as to which past work requirements can no longer be met and the reason(s) for his inability to meet those requirements; 2) medical evidence establishing how the impairment limits the ability to meet the

physical and mental requirements of the work; and 3) in some cases, supplementary or corroborative information from other sources such as the DOT on the requirements of the work as generally performed in the economy. *Speruggia v. Astrue* No. 05-CV-3532, 2008 WL 818004, at *12-13 (E.D.N.Y. Mar. 26, 2008).

## B. Analysis

The ALJ found that plaintiff could return to his past relevant work as a garbage collector and janitorial cleaner. (T. 58). Plaintiff contends that the ALJ failed to properly evaluate the scope of plaintiff's past relevant work and therefore her determination was not supported by substantial evidence. (Pl.'s Br. at 8). This court disagrees.

Plaintiff provided details of his prior employment as part of his applications, including the number of hours worked per day, the length of time that he stood, walked, and sat per day, the heaviest weight lifted, and the general scope of his duties. (T. 214-23). At the hearing, the ALJ sought further information, and questioned plaintiff about his duties and responsibilities at his three most recent jobs. (T. 16-20).

For example, in response to questions about his experience as a garbage collector, plaintiff testified that he rode on the back of the truck to collect residential trash. The ALJ asked whether plaintiff drove the truck, and inquired about the amount of weight that plaintiff generally had to lift. (T. 16-17). The ALJ also asked about plaintiff's reasons for leaving this job. Plaintiff testified that he had problems with transportation, as buses did not run early enough to meet his shift. (T. 17). When questioned by the ALJ, plaintiff testified that he did not seek other employment after

leaving this position due to family issues and because he "got complacent." (*Id.*).

As explained by the VE at the hearing, the position of garbage collector, DOT No. 955.687-022, is generally considered an unskilled job of very heavy exertion. (T. 38). However, at the hearing, plaintiff testified that his work as a back end loader on a garbage truck typically required lifting trash bags that only weighed between ten and fifteen pounds at the most. (T. 17). Taking this into account, the VE testified that as performed, the exertional level for plaintiff's past work as a garbage collector was more accurately classified as medium. (T. 38).

The ALJ also questioned plaintiff regarding his work as a laborer on a construction site, including the scope of his duties, the amount of weight plaintiff typically had to lift, and whether plaintiff's duties included construction or masonry work. (T. 18). Plaintiff testified that he had been in training, so his duties were limited to cleaning up trash and picking up equipment at job sites. (*Id.*). He was only required to lift between ten and twenty pounds at the most. (T. 19). In his testimony, the VE explained that this construction labor work would be classified as "Material Handler," DOT No. 929.687-030. While it would typically be at the heavy exertional level, the VE concluded that plaintiff's description of his duties was more consistent with light work. (T. 38).

Finally, the ALJ questioned plaintiff regarding his work as a cleaner with a janitorial and maintenance company, DOT No. 323.687-014. (T. 19). Plaintiff testified that he was part of a janitorial crew cleaning commercial buildings, and that his duties consisted of picking up trash and recyclables, vacuuming, dusting, and cleaning

bathrooms. (*Id.*). The heaviest weight that plaintiff had to lift was ten or fifteen pounds. (*Id.*). The VE testified that this job would be considered light work, under both the DOT definition and as described by plaintiff.[7] (T. 38).

The ALJ also asked the VE three hypothetical questions.[8] First, the ALJ asked the VE to assume that a person could lift and carry fifty pounds occasionally, twenty-five frequently, stand or walk for six of eight hours, sit for six out of eight hours, and had no limits on his ability to push or pull, and asked whether such a person could perform plaintiff's past relevant work. (T. 39). The VE opined that under this hypothetical, the individual would be able to perform all of plaintiff's prior work as he described it, and able to perform the material handler and cleaner work as described by the DOT. (*Id.*).

Next, the ALJ asked whether an individual with the same physical limitations but who was also limited to simple, routine tasks could perform plaintiff's past relevant work. (T. 40). The VE opined that such an individual could perform the job of garbage collector as performed by plaintiff, and the cleaner work as performed and as described by the DOT. (*Id.*).

---

[7] Plaintiff's brief does not identify any alleged errors in the ALJ's determination that plaintiff could perform his past relevant work as a cleaner at the light exertional level. Therefore, even if the court were persuaded that the ALJ erred in concluding that plaintiff could perform his prior work as a garbage collector, such error would be harmless.

[8] Step four of the analysis does not require that an ALJ consult an expert. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("A vocational expert or specialist *may* offer expert opinion testimony . . . about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.") (emphasis added).

Finally, the ALJ asked the VE to assume the same limitations, except that the individual could only lift or carry twenty pounds occasionally and ten pounds frequently. (*Id*.). The VE opined that such an individual could still perform the job of cleaner as performed by plaintiff and as described by DOT. (*Id*.).

Drawing on the medical evidence, plaintiff's testimony, the job description in the DOT, and the VE's input, the ALJ's determination that plaintiff's RFC would allow him to perform his past relevant work as a garbage collector at the medium exertional level described in his testimony, and to perform his past relevant work as a cleaner both as described by the DOT and as actually performed was supported by substantial evidence. (T. 58). The ALJ's determination, therefore, should be affirmed.

## IX.  **OBESITY**

### A.  **Legal Standards**

Obesity is not in and of itself a "disability," but the Social Security Administration considers it to be a medically determinable impairment, the effects of which should be considered at the various steps of the evaluation process, including steps three and four. SSR 02-1p: "Titles II and XVI: Evaluation of Obesity," 2002 WL 31026506, 67 Fed. Reg. 57859, 57861 (Sept. 12, 2002).[9] "[W]hen determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation

---

[9] SSR 02-1p recognizes three levels of "obesity," based on Body Mass Index ("BMI"), which is a ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m 2). Fed. Reg. at 57860. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. *Id.*

process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(Q).

Notwithstanding the requirements of SSR 02-1p, "there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases." *Cruz v. Barnhart*, 04 CIV 9011, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006); *Mancuso v. Astrue*, No. 1:06-CV-930 (GLS), 2008 WL 656679, at *5-6 (N.D.N.Y. Mar. 6, 2008) (the ALJ did not err by failing to specifically address whether plaintiff's obesity was a severe impairment), *aff'd*, 361 F. App'x 176, 178 (2d Cir. 2010). Furthermore, the ALJ may implicitly consider plaintiff's obesity in doing her listing and RFC analysis by relying on medical opinions which, although not specifically referencing limitations due to obesity, make overall assessments of plaintiff's limitations with clear awareness of his weight. *See, e.g., Paulino v. Astrue*, 08 Civ. 02813, 2010 WL 3001752, at *18-19 (S.D.N.Y. July 30, 2010) (although the ALJ failed to mention plaintiff's obesity when conducting step-three listing analysis, he satisfactorily considered the effects of plaintiff's obesity by relying on evaluations by doctors who accounted for the claimant's obesity) (collecting cases); *Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011) (the ALJ implicitly factored plaintiff's obesity into his RFC determination by relying on medical reports that repeatedly noted plaintiff's obesity and provided an overall assessment of her work-related limitations).

## B. Application

Plaintiff contends that at the time of the hearing, he had a BMI of 29.8, putting

him at the borderline for obesity. (Pl.'s Br. at 10). Plaintiff also notes that he was obese in June 2010, with a BMI of 33. (T. 407). The ALJ questioned plaintiff about his current height and weight at the hearing. (T. 11). However, plaintiff does not identify any medical opinions or other evidence of obesity-related limitations on plaintiff's ability to work, nor does he state any reason why the ALJ had an obligation to consider obesity before determining that plaintiff was not disabled. Numerous medical reports, cited by the ALJ, discussed plaintiff's height and weight, but none raised any concerns relating to his obesity. (T. 405, 407, 409-10, 413, 416, 425). Indeed, plaintiff merely argues that his obesity or near-obesity "may heighten his impairments, especially those regarding his arthritis." (Pl.'s Br. at 9). Such speculation is insufficient to justify remand, since plaintiff has the burden of proof on this issue. *Britt v. Astrue*, 486 Fed App'x 161, 163 (2d Cir. 2012). The ALJ's reliance upon the medical opinions in the record that discussed plaintiff's weight was therefore adequate consideration of plaintiff's obesity (or near-obesity), and her determination was supported by substantial evidence. *Paulino*, 08 Civ. 02813, 2010 WL 3001752, at *18.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be affirmed, and the plaintiff's complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d

Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 1, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge